Troy L. NICHOLS, Administrator of the Estate of John Lee Nichols, deceased, Plaintiff,

v.

The DEPARTMENT OF CORRECTIONS of the State of Oklahoma; Larry Meachum; Alfred Murphy; B. G. Smith and Federal Laboratories, Inc., a corporation, Defendants.

No. 56929.

Supreme Court of Oklahoma.

July 14, 1981.

O. A. Cargill, Jr., Cargill & Willits Law Firm, Oklahoma City, for plaintiff.

Jan Eric Cartwright, Atty. Gen., Manville T. Buford, Janet L. Cox, Asst. Attys. Gen., Oklahoma City, for Department of Corrections of the State of Oklahoma, defendant.

B. J. Cooper, Oklahoma City, for Larry Meachum, Alfred Murphy, and B. G. Smith, defendants.

Harry R. Palmer, Jr., Oklahoma City, for Federal Laboratories, Inc., defendant.

HARGRAVE, Justice.

The United States District Court for the Western District of Oklahoma has certified two questions of law to the Supreme Court of the State of Oklahoma pursuant to the provisions of 20 O.S. 1980 § 1601 *et seq.* An abridged statement of facts necessary to illustrate the nature of the controversy is embodied in the order of certification forwarded to this Court. Those facts disclose the plaintiff Administrator Troy L. Nichols alleged the civil rights of one John Lee Nichols, deceased, were violated when he was subdued in his cell at the Oklahoma State Penitentiary with the aid of liquid tear gas. Plaintiff alleged his decedent was exposed to this substance on two occasions, the first resulting in hospitalization and the second exposure allegedly resulted in death. The defendant Department of Corrections filed a motion to dismiss the action against it asserting three supportive grounds, which are: (1) That the Eleventh Amendment to the United States Constitution bars any recovery of damages from the moving defendant in this action; (2) that the moving defendant is not a "person" within the meaning of the statute upon which this action is based, 42 U.S.C. § 1983, and is therefore not subject to suit thereunder, and (3) the doctrine of *respondeat superior*, upon which it is asserted the action must be predicated as to the Department of Corrections, is not applicable to suits brought pursuant to 42 U.S.C. § 1983. The questions certified relate only to the first ground of the motion to dismiss. As certified, those questions are:

1. DID THE STATE OF OKLAHOMA GRANT A LIMITED WAIVER OF SOVEREIGN OR GOVERNMENTAL IMMUNITY TO TORT ACTION AS TO THE DEPARTMENT OF CORRECTIONS OF THE STATE OF OKLAHOMA, AN AGENCY OF THE STATE OF OKLAHOMA, TO THE EXTENT OF THE AMOUNT OF INSURANCE OR BOND OBTAINED PURSUANT TO 57 O.S. SUPP.1980, § 553?

2. IF THE ANSWER TO THE ABOVE QUESTION IS IN THE AFFIRMATIVE, WAS SUCH WAIVER OF GOVERNMENTAL OR SOVEREIGN IMMUNITY AS WAS ACCOMPLISHED PURSUANT TO 57 O.S.SUPP.1980 § 553 LIMITED TO ACTIONS BROUGHT IN THE COURTS OF THE STATE OF OKLAHOMA AND NOT APPLICABLE TO ACTIONS BROUGHT IN THE FEDERAL COURTS?

Under the provisions of 20 O.S. 1980 Supp. § 1602, this Court is given authority to:

... answer questions ... of law of this state ... as to which it appears ... there is no controlling precedent in the decisions ... of this state.

■ The statute involved, 57 O.S.Supp. 1980 § 553, appears on its face to constitute a carefully worded waiver of the defense of governmental immunity under certain circumstances expressly enumerated. The statute reads:

A. The Oklahoma Board of Corrections may provide an insurance policy or bond to indemnify from personal civil liability each member of the Board of Corrections and any officer or employee of the Department whom the Board may deem necessary to so insure. The insurance policy or bond shall be in the sum of not less than One Hundred Thousand Dollars ($100,000) for each Board member, officer or employee insured or bonded and shall indemnify each person from civil liability for acts performed while discharging or attempting to discharge his official duties.

B. The governmental immunity to tort action of the Department of Corrections of this State shall be waived to the extent of the amount of insurance or bond authorized and required herein, but in no case shall such immunity be waived in excess of the coverage, force or effect of such insurance or bond. To the extent that an insurer or bondsman has provided indemnity for the said individuals for acts proximately caused by the negligence of such employee the said insurer or bondsman may not, in an action, claim the governmental immunity of the State as a defense. No judgment shall be rendered in excess of the maximum amount of applicable insurance or bond authorized by this act.

This waiver of the defense of sovereign immunity closely tracks the rationale of this Court's earlier case law relative to the effect of legislative authorization to purchase insurance. See *Lamont Ind. Sch. District #1-95 of Grant County v. Swanson*, 548 P.2d 215 (Okl.1976); *Schrom v. Okl. Industrial Development*, 536 P.2d 904 (Okl.1975). Both this State's prior case law and the clear language of the statute indicate that the intent of the statute, 57 O.S.Supp.1980 § 553, clearly expressed, is to waive the *defense* of sovereign immunity in the limited situations enumerated by that statute. Thus the answer to the first question of law certified by the U.S. District Court for the Western District of Oklahoma is as follows:

The State of Oklahoma, by the unambiguous language of 57 O.S.Supp.1980 § 553, did intend to waive the defense of sovereign immunity to tort action as to the Department of Corrections of the State of Oklahoma only to the extent of the coverage, force and effect of any such insurance or bond obtained pursuant to that statute.

This statement of the answer to the first question certified to this Court necessitates that the second question certified here be answered: "was such waiver of governmental or sovereign immunity as was accomplished pursuant to § 553, *supra*, limited to actions brought in the Courts of the State of Oklahoma, and not applicable to actions brought in the Federal Courts?"

■ The basis for such inquiry is the effect of the 11th Amendment to the Constitution of the United States. Although the exact terms of the amendment do not extend to suits against a state by one of its citizens, the amendment has been consistently so interpreted from an early time. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), and cases cited therein. Further, where the suit is brought for recovery of money which will be ultimately paid out of the state treasury, the action is precluded by the 11th Amendment even though the state is not a named party. *Ford Motor Company v. Department of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945). The Eleventh Amendment to the Constitution of the United States provides:

The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

At the outset of this discussion it is noted that in this Court's opinion the expressed language of the 11th Amendment compared to the provisions of 57 O.S.Supp.1980 § 553 indicates the legislature did not word the statute in such a manner as to indicate a waiver of the prerogatives granted the state by the 11th Amendment. The state statute, § 553, *supra*, refers to a limited waiver of *the defense of* governmental immunity from suit. At the same time, the 11th Amendment speaks, in the express terms at the beginning of the amendment, of "the judicial power of the United States." This Court does not understand the waiver of a defense in the state statute to be directly indicative of an attempt by the Oklahoma Legislature to enlarge upon the judicial power of the United States. The effect of the 11th Amendment as a limitation on the power of the federal court, as opposed to the availability of the defense of sovereign immunity, has been spoken to frequently by the federal courts, and predominantly these decisions are supportive of the principle that the 11th Amendment to the federal constitution comprises more than a constitutional guarantee of the efficacy of the defense of sovereign immunity. The following statements are indicative of that fact: This amendment limits power of federal judiciary to enforce private rights against state. *Peel v. Florida Dept. of Transp.*, 600 F.2d 1070 (5th Cir. 1979). Doctrine of sovereign immunity at common law is to be distinguished from sovereign immunity embodied in the 11th Amendment. *Litton RCS., Inc. v. Pennsylvania Turnpike Commission*, 376 F.Supp. 579 (D.Pa.1974), *aff.* 511 F.2d 1394, *aff.* 513 F.2d 240. The sovereign immunity embodied in the amendment is a limitation on the constitutional grant of jurisdiction to the federal courts. *Jordon v. Gilligan*, 500 F.2d 701 (6th Cir. 1974), *cert. den.* 421 U.S. 991, 95 S.Ct. 1996, 44 L.Ed.2d 481. Prohibition placed on power of federal judiciary by this amendment exceeds common law doctrine of sovereign immunity. *Aquilar v. Kleppe*, 424 F.Supp. 433 (D.Alaska 1976). This amendment seems to narrow scope of permissible exercise of federal jurisdiction. *Medicenters of America, Inc. v. Comm. of Virginia*, 373 F.Supp. 305 (E.D.Va.1974).

Additionally there are statements from the U.S. Supreme Court which are indicative of the dichotomy between a defense of sovereign immunity and the 11th Amendment. Federal court cannot issue process against nonconsenting state on ground that suit is *in rem*. *State of Missouri v. Fiske*, 290 U.S. 18, 54 S.Ct. 18, 78 L.Ed. 145 (1933). This amendment denies to federal courts authority to entertain a suit brought against the state. *Ford Motor Co. v. Dept. of Treasury of State of Indiana, supra*. A federal court has no jurisdiction to hear unconsented suit. *Georgia R.R. & Banking Co. v. Redwine*, 342 U.S. 299, 72 S.Ct. 321, 96 L.Ed. 335 (1952).

A recent Supreme Court of the United States statement on this point is found in *Edelman v. Jordan, supra*, 415 U.S. at 677–678, 94 S.Ct. at 1362–1363. The Supreme Court stated:

> . . . it is well settled since the decision in *Ford Motor Co. v. Department of Treasury, supra*, [323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389] that the Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar so that it need not be raised in the trial court.

The federal authorities above noted have continually refused to equate the defense of sovereign immunity with the jurisdictional limitation upon federal court suits against the state. On consideration of that fact and the clearly expressed, but limited, waiver of *the defense* of sovereign immunity contained in 57 O.S. 1980 Supp. § 553, it is determined that the language used in the statute cannot be said to have expressly waived the 11th Amendment protection afforded the state.

While this Court has recently held in *Schrom v. Okl. Industrial Development*, 536

P.2d 904 (Okl.1975); *State Board of Public Affairs v. Principal Funding Corp.*, 542 P.2d 503 (Okl.1975), and *Lamont Independent School Dist. # I–95 of Grant Cty. v. Swanson*, 548 P.2d 215 (Okl.1976), that relinquishment or waiver of governmental immunity may be implied in the absence of a statute clearly permitting the state to be sued, the rationale supportive of that line of reasoning is not applicable to waiver of 11th Amendment protection on several points. In *Schrom*, the implied consent to suit was demonstrated by noting in the absence of consent implied, an expenditure for a policy of insurance would provide no benefit to the State:

> In our opinion, where the Legislature authorizes a department to purchase liability insurance, Legislative waiver of governmental immunity to the extent of the insurance coverage must be implied. Otherwise, the insurer would reap the benefits of the premiums paid without being obligated to pay any damages for which the department was insured. A Legislative appropriation to a department presupposes the department will receive benefits for its expenditures.

> Therefore, Legislative authority for a department to purchase liability insurance must be construed to include a consent to be sued and a waiver of governmental immunity to the extent of the insurance coverage only.

As demonstrated, the rationale behind *Schrom, supra*, and related cases is that purchase of liability insurance presumes there exists liability. In absence of the liability the state would have insured itself against zero risk. This basis for implying a waiver of sovereign immunity will not support a waiver of 11th Amendment rights, however. The state may purchase insurance and waive its state court defense of sovereign immunity, thereby providing a state court forum for resolution of claims against the state for which there is liability coverage. Having done so, the state has provided both a fund and forum for adjudication of claims. Denial of an additional federal court forum for resolution of claims against the state does not render insurance expenditures futile, but simply directs recovery must emanate from the state forum. There is thus not a compelling reason for implying waiver of 11th Amendment immunity such as there is for implying a waiver of sovereign immunity in *Schrom, supra.* The Court is thus of the opinion that the cases cited by plaintiff, such as *Lamont, supra*, and *State Board of Public Affairs, supra*, do not indicate a waiver of the 11th Amendment limitation as well as the defense of sovereign immunity in state court. Those cases are founded upon considerations not applicable here.

The implied waiver found to exist in *Schrom, supra*, and related cases was a departure from the previous refusal to imply a waiver of the defense of sovereign immunity found in *State ex rel., Department of Highways v. McKnight*, 496 P.2d 775 (Okl. 1972), and similar earlier cases cited therein. The express repudiation of *McKnight, supra*, found in *Schrom, supra*, is not broad enough to be read as an indication that this Court has declared that the State's immunity from suit in federal court granted by the 11th Amendment may be waived by implication in state court. A waiver of the 11th Amendment constitutional provision should not be implied without clear evidence of State Legislative intent. As the United States Supreme Court has noted recently, constructive consent is not a doctrine commonly associated with the surrender of constitutional rights, and thus this Court adopts the criteria utilized in *Edelman v. Jordan, supra*, 415 U.S. at 672, 94 S.Ct. at 1360:

> In deciding whether a State has waived its constitutional protection under the 11th Amendment, we will find waiver only where stated by the most express language, or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.

The answer to the second of two certified questions referred to this Court for resolution must be, and therefore is, as follows:

The limited waiver of the defense of sovereign immunity accomplished pursuant to 57 O.S.Supp.1980 § 553 does not affect the 11th Amendment limitation on the cognizance of actions against the state in federal courts.

ANSWERS TO CERTIFIED QUESTIONS ARE HEREBY ORDERED AS ABOVE STATED.

IRWIN, C.J., BARNES, V.C.J., WILLIAMS, HODGES, LAVENDER, SIMMS and OPALA, JJ., concur.